Good morning, Your Honors. Dennis Reardon appearing along with Gary Dubkop for Appellant Beattie. I will be presenting the entire argument this morning. Your Honors, the whole point of the warrant requirement is to ensure that an impartial magistrate, not an investigator, makes the decision whether the information in a warrant application upon which the search is to be justified is sufficiently extensive and credible to justify the intrusion on private property. The United States Supreme Court has said that question of the reliability of information to justify a search is particularly important in Title III electronic surveillance cases. If the investigator takes it upon him or herself to identify the issues, perhaps the problems with credibility, to resolve them in his or her mind, and then not to allow the magistrate to be aware of the problems by failing to identify them or failing to give enough information that the magistrate can identify a credibility problem and examine the... Counsel, let me tell you what my problem with your argument was so you can address at least what was on my mind. I appreciate that. It looked to me as though the informant was highly unreliable. This woman, she's in jail at the time, she's a dope dealer herself, highly unreliable. But if I had been the magistrate judge or the district judge reading the search warrant affidavit, my thought would have been, well, Marshall, the agent, told me she's unreliable. He told me that she's in jail and she's a dope addict and a dope dealer. So I already know enough. And it looked as though whatever lying there was or whatever false statements that may have been mistakes rather than lies, it looks like it was mostly her rather than Marshall. And the Frank's question is whether Marshall lied to the judge, not whether she lied to Marshall. Once Marshall disclosed to the judge what kind of a low life he was relying on, it seems like that's all done. Why am I misunderstanding this? I'd submit this, Your Honor. In fact, what was provided in a sense, instead of allowing the magistrate to make that determination, was doubly misleading. You're correct that the Marshall says now at the time of this warrant application, she's in jail. And he says she's convicted. She's been convicted of a drug offense. And there's information in there that would lead him to believe that she was involved in drug dealing. You know, if somebody's involved in drug dealing, of course, that one says gives them an access to observe some drug dealing. So they'd have information about that. Here's the absolute key point that produces the distortion. And it does on about five or six different levels, and I'll try and rattle through them. They withhold the information from the magistrate that she has been in jail from December 14th through mid-January, perhaps the 19th, and then from February 6th on. During which time she claimed to him that she had overheard this conversation. That's right. Let me just state this as a hypothetical. Imagine she had been called as a trial witness, and she testifies that she overheard conversations on February 14th and 15th. And the prosecution presents that testimony of Beatty and Pitts, for example. And then he makes a motion to eliminate her, the judge. He says, Your Honor, I want you to order defense counsel to – I want to prohibit them from bringing out the fact that she was in jail when she said she overheard the conversations. Some of the – maybe not all, but that some of the statements she made about periods when she was in jail were attributed explicitly as hearsay that she heard from her boyfriend or someone else. Is that wrong? Well, she makes statements, for instance, about the 15th and the 16th. She says there was an attempt – on the 16th, she says there was an attempt to buy drugs last night. And, of course, she's in jail. And so the officers go back and do a follow-up interview, and they say, How do you know this if you were in jail? And she says, Essentially, well, I got the information from my boyfriend. Wasn't that disclosed or was that not disclosed? Well, it was not disclosed. Well, just first please answer my question and then argue afterwards. Was it disclosed that she got this information from her boyfriend, in other words, that it was hearsay? No, Your Honor. What the affidavit simply says is that she informed them that there had been an attempt to buy drugs the night before. That's what the affidavit says. What the judge doesn't know, and has no reason to know from reading this affidavit, is that she is in jail and could not possibly have observed this. What the judge doesn't know is that they were worried about this. So they did a follow-up interview. They go back and they say, How could you possibly know this? And she says, Well, I got a lot of information from my boyfriend, who's been visiting. You're saying that follow-up interview is not disclosed to the judge. Right. And you're saying your argument is that it must be. Right. My argument essentially is that what they took upon themselves was identifying what they saw as a credibility problem. Apparently, they satisfied themselves about it, but they decided not to let the trier of fact know that there was this enormous credibility problem. Didn't the district judge make a finding of fact that the mistake by Marshall was not intentional and was not recklessly false? And even if it had been, that that particular paragraph would not have affected whether he issued the warrant? Why didn't that seal the thing off? Well, Your Honor, what the district court did, I would submit, and I'll try and tick through it, that there are 15 issues created by the failure to disclose the fact that she's in confinement. What the district court did was it allowed a Franks hearing on the issue of whether when she said that she observed a drug sale on February 7th, which was absolutely impossible because she was in jail, whether that was reckless on Mr. Agent Marshall's part. I don't know if she exactly said she observed it. She said there was a drug sale when she was in jail and couldn't have observed it. Right. And the court allowed a hearing on that issue. But it did not allow a hearing. And if it were the case. See, I was sort of underwhelmed with that because there are a lot of things where we say thus and such happened, though we did not personally observe it. Yeah. No, I understand, Your Honor. And if that were the single issue in the case and it were parsed that way, we might not be here today. But the fact is that what the district court didn't allow, I mean, it's one thing to be able to ask Mr. Marshall, well, you know, that language suggests that she observed this when she was in jail. And why didn't you say she was in jail on that occasion? It's another thing to say for him to say, well, you know, it was a figure of speech. There was an ambiguity. And then to say, well, what about on the 15th and 16th? I mean, why weren't you telling the court that she was in jail on those occasions? The court did not allow a Frank's inquiry on the rest of the statements in here. What happens is you get these layers. They go back and they say, gosh, we've got a problem. Let's ask her about this. And she says, oh, my boyfriend would visit with me. He visited with me yesterday. Well, that was a lie. It was simply untrue. The records obtained prove that she had said that she had a visit on April 9th and would have another one on the 10th. There was no visits on those days. I apologize for interrupting. No, absolutely. It's on my mind. It's what you think that counts, Your Honor. The records show that the police, that the affiant knew that she was lying about when her boyfriend met with her. No, Your Honor. Because if it doesn't, then why isn't that a so what? Well, Your Honor, what I would say is when you look at the weight of these, there ought to be a record. The defense was not given a Frank's hearing on that matter. It was not allowed to say, well, the government notes reveal that they do this interview on the 10th of April. She says I had a visit on the 9th. That's how I'm learning these things. She didn't have a visit on the 9th. But there is no Frank's hearing permitted on the issue of whether they then checked those records or why they did not, or why did they not allow the judge. I mean, this judge is under the impression from reading the affidavit that she is observing all of these things personally. I don't understand why he'd be under that impression. Like this statement, the one that you alluded to a moment ago, the affidavit says, on February 16, 2000, CS No. 1 advised Pitts attempted to purchase cocaine from Beatty on February 15, 2000. It doesn't say she personally observed it. Most of the things that we purport to know are not things we personally observed. When a prosecutor or a defense lawyer tells a jury what the facts are, neither of them observed it. The jury says what the historical facts are. They didn't observe it. Judges make findings of fact. They didn't observe it. Gosh, I think the Twin Towers were taken down by al Qaeda September 11. I didn't observe it. Most of the facts that we think are true we take on hearsay. And it doesn't say to the contrary. Let me go back to my hypothetical. Let's say that she had given that testimony from the witness stand. They called her as a witness in front of a jury. Objection. Hearsay. No, no, no. And she says. Rebuttal, admission by the defendant. She says an attempt was made to buy drugs on that night, and it's left there. After the trial, it's discovered that the prosecution had information that she was in jail on that day and Pitts was not. Would that be a Brady violation? Your Honor, it absolutely would. If they kept the finder of fact. Yeah, but this isn't a Brady issue before us right now. It's an issue of whether Marshall, the agent, was tricking the judge into issuing a warrant, basically. Right. And he doesn't say she saw it. But my point is this, Your Honor. No one would countenance an argument that the issue of whether if a person makes that statement, an attempt was made to buy drugs last night, that they were in jail when this event obviously didn't occur, happen in the jail, no one would maintain that the fact that they were in jail is not relevant to a determination of their credibility. You could know a lot of things while you're in jail. I mean, gosh, my wife and I talk about what's going on with our kids. Two of them are about 5,000 miles away and one of them is 8,000 miles away. Your Honor, if that fact had been revealed to the magistrate and the magistrate said just that, we wouldn't have a problem. But the notion that an impartial magistrate is determining the credibility of CS1 when the magistrate is being kept in the dark that she's making statements about events that are occurring while she's in jail, when the agents themselves knew it posed a question of credibility because they chose to go back and examine her on it, isn't what they've done, they've said, look, we're satisfied about her credibility. Why should we trouble the magistrate with these troubling facts? I have a question for you. What is the best precedent that you think you've got from either the Ninth Circuit or the Supreme Court, preferably, or some other court if not those, that says that in this context, when we're considering the submissions to the magistrate, that the magistrate has to have a certain degree of information to make a credibility assessment of the confidential informant? Well, I think that's what you're arguing is that the way the system works, the magistrate is supposed to make that credibility determination and the police, even if they're acting in good faith, can't make an assessment and cut off that information. And I can hear Judge Kleinfeld's question, seems to be, but I thought we're looking at did the police make a misrepresentation or intentionally trick the magistrate? You seem to be arguing that the magistrate is entitled to the information that is relevant to the confidential informant's credibility. Absolutely. So I'm saying what's your best precedent on that? Well, Your Honor, I would submit from, and this isn't going to be a satisfactory answer, I would submit that there is no case that's necessarily factually similar, but the notion that the magistrate has to be informed of problems with the informant's credibility, that is why the government put a statement in there that this person is not known to have ever given false information. And I submit that in a situation in which we know that she told these agents, because they were concerned about it, she told them about a Milwaukee drug operation. They said, how could you possibly know about that? She says, I saw these things when I was in Milwaukee. And they don't put that in the affidavit because they believe, I submit, that it was a false statement. There was no evidence that she and Beatty were ever in Milwaukee together or that Milwaukee, that either Beatty or she was in Milwaukee. They pulled out the lie, that is, that she was there in Milwaukee. But what they didn't inform the magistrate of is that that was a statement that was so, you know, apparently fallacious. She was on house arrest. She took this bracelet off. There was a period, a short time in December where she was running around, but she certainly wasn't in Milwaukee. And they said, well, she learned about the drug operations from things that Beatty told her, when in fact she had said she was in Milwaukee. And then they say, so they don't, the magistrate doesn't learn that there are profound problems with her claim to have been in Milwaukee. But the magistrate does get a statement that she's never given false information. Basically, your argument is they put in the affidavit that C.S. No. 1 observed that as observed by her, all of these things came to light. Later they learned that she couldn't have observed, and they didn't bring that to the attention of the magistrate. Is that your argument? Right. The Milwaukee allegations are framed as things that she knew from Beatty. But before they submitted this affidavit, again, Agent Wilson was the vetter. She was sent back, and we've listed in our brief specific questions that she was asked. How do you know this information about Beatty in Milwaukee? And she talked about observing him in Milwaukee. And when they realized that they would not want to put that statement in an affidavit, it got into that she learned it from Beatty. But what the magistrate doesn't know is that there was an examination by the agents of a credibility of these kinds of claims, and they appeared to be completely fallacious. I understand your argument. But I would submit that the law is quite clear that the government has an obligation to allow the magistrate not only to pass on the adequacy and sort of a sufficiency sense of the information offered to support a warrant, but to have before it relevant information on, you know, does this person have a track history? Have they been found credible before? I might get back to my question. What's your best legal authority on the point you're arguing? Now, you know, if it's unprecedented, you can argue for some new law. This is a Federal appeal. It's not a habeas case from state court. But still, you can't exactly say the law is clear. I don't think persuasively, if you can't give me a case, what's your position? I'll just begin with the Supreme Court's statement in Berger v. New York that the need for evidence of reliability, not sufficiency, but reliability in the showing required when judicial authorization of a search is sought is especially great in the case of electronic eavesdropping. So the Supreme Court has said there has to be an affirmative showing of reliability to get a warrant, and a particularly great one in the case of electronics eavesdropping. It is equally true that because that's true, the government cannot make omissions relative to reliability and credibility in their warrant submission. I see I have a minute left, Your Honor, and with the Court's permission, I'll reserve that for rebuttal. Thank you, Counsel. May it please the Court, Your Honors. Heywood Gilliam, Assistant United States Attorney on behalf of the United States. As the Court can see from the record, this was a case that was litigated extensively over a period of nearly three years. There was heavy litigation at every stage of the proceeding. The district court made thorough and lengthy and repeated findings on the issues that defendant raises on appeal. And the United States would submit that there is no showing that the district court clearly erred in making those detailed findings. Could you talk about the contention that she lied about being in Milwaukee, the agent knew she lied about being in Milwaukee, and the agent wrote in the affidavit that she had not given false information? Yes, Your Honor. And this actually typifies one of the important points, which is that the Court needs to look at the actual record that was established below. Just help us do it. Yes. In essence, the – Just show us the pages that you want us to look at and we'll do it. Yes, Your Honor. The fact of the matter is that there was not – there was no – the defendants did not establish below that the agents knew that that trip was false, as the district court found. In fact, the district court specifically found, looking at the materials that the defense had submitted, that there was no showing that the trip – that CS-1's account of the trip was even false, and certainly no evidence that the agents knew that it was false. Well, I thought the district court judge said that it was negligent, not reckless, for the agent Marshall not to report that he found out that she was in jail all that time. Well, that's a different point, Your Honor. When the Milwaukee trip would have happened, there was not a contention that she was in jail. All right. Well, then we'll get to that after the Milwaukee trip. Yes, Your Honor. What concerns me about the case is the failure of Agent Marshall to inform the magistrate what he had found. I will address that, Your Honor. But as to the Milwaukee – You told us to look at the record, and I like doing that myself. So anytime you have excerpts of record pages, just tell us what they are. Yes, Your Honor. Yes, Your Honor. Well, the district court's finding on that matter was in its order denying the motion for reconsideration at excerpt of record 138 through 139. And essentially, and it's interesting, if you look at the appellant's brief here at pages 50 and 51, there are a number of contentions about what the record supposedly showed with regard to this Milwaukee trip. And there is not a record site anywhere in the defendant's contentions. In other words, the defendants basically argued that the trip must have been false because phone records didn't show that a trip occurred. Airline records didn't show that a trip occurred. It's important to note that the CS didn't report how she got to Milwaukee, so the idea that flight rec – airline records didn't – did or didn't show anything would not be a substantial showing of falsity. But in essence, the defense threw out for the Court its theories and its – its arguments as to why the trip must have been false. But there simply was no showing, one, that the account even was false, and, two, that in any way it would have been that the agents knew that the information was false. In other words, there's – there was this assertion, assumption that was made without citing to particular evidence in the record of any type, cell – cell phone records or anything else that backed up the defendant's assertion that the trip must have been  So far – False, and it isn't definite that it was false. Exactly. Is that right? It's both of those things, Your Honor. And we review that for clear error? That is correct, Your Honor. Could you please at some point in your argument address the crux of – of Appellant's argument, which I take to be that – that it's necessary to serve up before the magistrate  the relevant information that relates to confidential informant's credibility, and that that wasn't done here, that the police made their own assessment, you know, and they said, well, she's been reliable before. They addressed reliability, I guess, by saying she's clicked for us before or something like that. It hasn't been long before, but they didn't disclose to the judge some of the concerns that are raised by Appellant. I will, Your Honor. And first, I think it's important to note that the – that the law is clear that what Franks is about is either an intentional or reckless false statement or an intentional or reckless omission. And the cases – I submit, like Your Honor, that there is no case that supports the argument that the defense is making, that there's essentially some affirmative duty to cull information, obtain information relevant to credibility and present that to the magistrate. Counsel, that may be true, but they – they didn't trust her, and they went back and checked and found that what she said was false, and they did not report that back. But, Your Honor, again, I think – and this is why the – the content of the record is critical here. I submit that there was not a finding that her information was false. Again, the defense argues that there – it must have been false because pen register data didn't show – didn't jibe with certain calls, for example. But the district court looked in depth at the showing that the defense presented in the court below and found that for many of those statements, there simply was no basis for concluding that there was even a false statement. Let me make sure I understand that part. The argument that it's false is, well, the pen register on his phone doesn't show that any calls were made then. And the argument that that doesn't show anything is you can go out and buy one of these prepaid cell phones and just make calls without it showing up on the pen register from your landline at home. Well, that was one of the arguments that the – that the district court looked to. But, for example, with regard specifically to this December 13th versus December 14th issue that was – that has been raised by the defense, the informant initially reported that a call had taken place on a particular date. And I think it's important to put this in context. The defense argues as though the agent's efforts in trying to determine the basis for the informant's information is somehow insidious, that that shows that they were trying to change the record. They knew that it wasn't true, and therefore they had to go back and try to alter the record. I would submit that what that shows is that there was diligence and good faith on the part of the agents here in trying to present information to the magistrate and make sure that – or to the district court and make sure that the basis for the informant's knowledge was confirmed wherever possible. Now, in this particular instance, what happened was the agent, Agent Wilson, knew that the informant was arrested sometime on a particular date. And so she went back and said, hmm, maybe, you know, could it have been the case that this call took place on a different date? And the informant confirmed that that was true, that it could have. So that even in that instance, Your Honor, to the extent that there was some finding that that initial report might have been false, there is no evidence to indicate that the intent that the agents had here was to mislead the court. It's exactly the contrary, that the agents were doing a good faith job of trying to verify the basis for the informant's statements and that it was not the case that they were trying to mislead the district court. I'd like to ask you a question that's the opposite of what I was asking the counsel for appellate. Do you have any authority, or what's the best authority you think that would suggest that credibility problems with the confidential informant do not have to be disclosed to the judge who issues the warrant? Because we're not dealing with, like, a state prisoner and, you know, a DEPA standard where we can only follow Supreme Court precedent. I guess we're free to make a rule about how we think Frank sought to operate. So is there any precedent squarely on this issue? Well, Your Honor, I think two cases that are on point are the Melling case and the Miller case. Essentially, in the Melling case, there was a contention that the agent did not obtain readily available information, or what the defense claimed was readily available information about the informant's mental state, that there were public records that showed that the informant had mental problems and that there were other criminal records that could have been obtained. And the court in Melling, this court, found that the failure or the decision by the agents not to go and obtain that additional information, even though it may have been That's a failure to obtain information. Here they obtained information. Doesn't that distinguish this case? Well, Your Honor, here, again, though, what I would submit is that there was no – at the end of the day, there was no showing that the information that they had was false and rendered questions as to the credibility of the informant, except for the limited statement that, and Agent Marshall acknowledged this, that they knew that the informant had used an alias when she was arrested in Reno. And what the court found, the district court on that matter, was that, one, there was no evidence that that material was omitted with intent or recklessness that would be required to suppress, and, two, that even essentially with regard to information like that, it was not material in the overall mix, given that it was disclosed that this was a person who had a criminal record, who had been committing crimes while on probation, that she had gone on the run by cutting off an electronic monitoring bracelet, such that the court had sufficient evidence before it on which to make a judgment about the informant's credibility. But tell us about the Miller case, then. The Miller case was a similar situation, Your Honor, in which there was a joint investigation or an investigation in which both Federal officers and State officers were involved. The State officers did interviews of various people about the crime that was under investigation, and people made sort of offhand references about the instability of the informant, essentially. And that information, again, was not obtained by the Federal officials, even though they were the same set of circumstances as the Miller case, then. Well, except that the State, the county officials in Miller were involved in the same investigation. So to the extent that they were not, that the agents did not find out about these allegations about the mental state, that was claimed by the defense in that case to be intentionally or recklessly misleading. And the court, again, found that at most that was negligent, if that, and that reliance on the rap sheet of the informant was appropriate. And I think it's also important on the custody issue, Your Honors, to note what should be obvious but is glazed over by the defense, which is there was a Franks hearing granted here, and it was granted on three bases. One was in a declaration that the defense obtained from the informant under what the government would characterize as suspicious circumstances in which the informant essentially recanted saying anything to the authorities. And the district court identified that declaration as the primary basis for the Franks hearing. And we don't hear anything about that on appeal. None of the – at the Franks hearing, there was really no legitimate attempt to controvert the agent's testimony that they had actually gotten that information from the informant. And the district court had a full opportunity to judge the credibility of the agents in that context. The other two bases really do go to this custody issue that the defense continues to raise on appeal. And the findings that the district court made in the Franks hearing undermine the argument that the defense makes as to the rest of the instances in which custody was supposedly admitted – omitted in a misleading way. Because essentially, the district court, again, took testimony on these very specific points and found that, for example, as to the February 1st versus January 30th instance in which basically the affidavit indicates that on – on February 1st, the informant said that there had been a delivery of cocaine on January 30th. And then essentially because of the way that the affidavit is drafted, it makes it sound as though the report, or actually the overhear of the conversation, was on February 1st. The district court fully fleshed that issue out. The defense had a chance to cross-examine the agents, and what they found was that Agent Marshall was compiling the affidavit by taking 302 investigative reports from various people who had spoken to the informant and trying to piece them together in a way that was accurate, so that it's clear on the face of the affidavit – this is paragraph 57 of the affidavit – that what was being discussed was a delivery of cocaine on January 30th. And to the extent that occurred on, that was not evidence in any way of recklessness or intent to mislead. Similarly, with regard to the February 7th call, which is one that the defense continues to rely on, the finding was similar. If you look at the paragraph of the affidavit that is involved there, this is paragraph 61 of the affidavit, which is an excerpt of record 51 and 52, you'll see that the issue is similar. Essentially, the affidavit says that on February 7th, C.S. advised Pitts received cocaine from Beatty on February 6th. So that's the context of the – that paragraph. Then further along, it does – and again, this is a drafting issue, essentially, the court found. It does seem to suggest that the informant observed the cocaine on February 7th, at which point she was in jail. But basically, the – this was – the court had a chance to see a product of Agent Marshall in good faith trying to take the information that he had and synthesize it in a way that was truthful rather than any attempt to mislead the court about anything, frankly. And I think the key point that needs to be made, and Judge Nelson raised this, is that it simply is not – or raised the issue. It's not true at all that there were instances in which the court found that the informant was reporting precipient knowledge of transactions on the dates that she was in jail. And essentially, the court found and did a very detailed finding in its – in its majority of instances, it was made clear whether the informant was reporting firsthand knowledge or whether she was passing on information that she had obtained from someone else. This is at Excerpt of Record 122 and 123. The point being that in an affidavit of this length and an investigation of this complexity, it's – there's simply no basis, as the district court found, for concluding that the purpose of omitting, if it's even an omission, CS1's custody status on particular dates was intended or – to mislead the judge or was reckless as to that possibility, because the affiant was actually scrupulous in virtually every case about attributing her information. Help a little bit with – let's see. Paragraph 61, that's where Marshall uses the words overheard and observed in relation to what had informant one told him. And that's actually a date when she was in jail. So she might have been told these things, but she couldn't have overheard the call or observed the transaction. And what does the judge say about it? Right. Your Honor, the court's finding on that was basically in the transcript of the Franks hearing itself. Could you just tell me the page? Sure. It's at – actually, Government's Excerpt of Record has the entire transcript. So it is Government's Excerpt of Record. It's at 282 and 83. And again, I think where the confusion came in, and this was an issue on which there was testimony at the Franks hearing, and Agent Marshall essentially took the February 7th date from the face of the reports that he was giving. He was trying to put it together. Agent Wilson, I believe, testified that she hadn't gotten a particular – she hadn't nailed down CS1 as the date on which the observation happened. But the point with regard to this paragraph was there's clearly – there's a description of a Sunday, February 6th, 2000 transaction. And it – the court essentially found, having heard the testimony, that this was a drafting error on Agent Marshall's part in terms of listing the date on which the overhear happened. But it's also important to note that the court found that even if the entirety of this paragraph was excised, the affidavit would still provide more than ample probable cause to support the wiretap. So that the court essentially made a finding that there was no showing of intentional or reckless intent or recklessness as to this statement. But even if there had been, that this statement was not material and required to the finding of probable cause. In other words, there was just so much more that probable cause would have been established without those statements.  That was what the court found, Your Honor. Your Honor, to say that my time is nearly up, I would ask this Court to affirm the defendant's conviction. Thank you, counsel. Concisely and specifically, Judge Gould, in response to your question, both parties have discussed United States v. Hall, which is on page 37 of the government's brief, and in ours as well, 113 Fed Third 157, where this court finds that the government had an obligation to disclose an informant's filing of false statements and that the failure to do it was to disclose it in the affidavit was reckless, saying that obviously the fact that someone's a liar makes them less worthy of belief than someone who has not lied. Secondly, the key thing about the Milwaukee... And was there a conviction of a false statement crime? A filing of false police reports. Yes. The key thing about the Milwaukee situation is that the district court judge denied a Franks hearing on the ground that the... And this is in its opinion at page 139 cited by the government, that CS1 had not stated that she had taken a trip to Milwaukee. And in fact, CS1 had stated just that. The court was under a misimpression when in the follow-up interview with Agent Wilson, CS1 said that she knew this stuff about Milwaukee based on her observation when she was in Milwaukee. So the court was saying, well, CS1 never represented there had been a Milwaukee trip. In fact, she did. That was not disclosed in the affidavit. And the reason it wasn't, I submit a hearing would have disclosed that the government knew that it was false and didn't want to be in the position of putting false statements in the affidavit, so it changed it to, oh, she heard it from Beatty. A very quick point. I mean, another factor of the failure to disclose the custody is that when you look at the record, a criminal record which wasn't disclosed, it was very fulsome as to the alleged defendants, but minimal, just the fact she had a drug conviction, and look at the custody status, it becomes clear that every time that CS1 is arrested for buying drugs on the first day she's in, whether it's December 14th or February 7th, she's contacting the FBI seeking leniency by advancing statements about drug dealing on other people's part. And, you know, that notion of is there a motive to lie is quite evident if you look at her criminal arrest, her record, and her custody status. But Judge Hilston, the issuing magistrate, would have no reason to know of it at all from this affidavit. And just a final statement. I don't think there's an area of the law, you can look at cases like Ojeda-Rios, the United States Supreme Court case which deals with the different issue of sealing in the Title III context, in which the Supreme Court is more vigorous in its enforcement of technical requirements for affidavits for electronic surveillance and more willing to apply suppression remedies. And the reason for that is that Congress has recognized and set up a scheme that reflects that this society is extraordinarily wary of electronic surveillance and demands that it be conducted in a particularly fastidious manner. The Supreme Court has said that applies to the reliability requirements to a great extent, and there is just no way that the issuing magistrate here could make a fair judgment about whether to take that step, of issuing an electronic surveillance warrant on this affidavit when most of the information that had troubled the agents, and they had it investigated, had been kept from the magistrate through withholding it from the affidavit. I thank you, Your Honors. Thank you, Counsel. United States v. Cady is submitted.
judges: D.W. Nelson, Kleinfeld, Gould